UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN M. SCHNEPF, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-0316-TAB-JMS |
| | ) | |
| BROTHERS AUTO SALVAGE YARD, INC. | ) | |
| d/b/a BROTHERS AUTO PARTS, | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL**

The Court held a bench trial in this matter on November 7, 2011.  The Court received

evidence and heard argument, and took the matter under advisement.  The Court also provided

the parties an opportunity to submit proposed findings of fact and conclusions of law, which they

did.  Based on the foregoing, the Court issues the findings of fact and conclusions of law below.

**FINDINGS OF FACT**

1. Plaintiff Brian Schnepf was employed by Defendant Brothers Auto Salvage Yard, Inc.

d/b/a Brothers Auto Parts as an inside salesman from October 2007 to February 2010.  [Tr. at

16:12–17:1; Docket No. 1, ¶ 13; Docket No. 13, ¶ 13.]

2. The principal activity of Brothers' business is the sale of auto parts.  [Tr. at 54:11–24.]

3. At all times relevant to this action, Brothers was an enterprise within the meaning

of Section 3(r) of the Fair Labor Standards Act, 29 U.S.C. § 203(r).  [Docket No. 1, ¶ 10;

Docket No. 13, ¶ 10.]

4. At all times relevant to this action, Brothers was an enterprise engaged in commerce or

in the production of goods for commerce within the meaning of Section 3(s)(1) of the Fair Labor

1

Standards Act, 29 U.S.C. § 203(s)(1), in that the enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.  [Docket No. 1, ¶ 11; Docket No. 13, ¶ 11.]

5. At all times relevant to this action, Schnepf was an employee "engaged in commerce or in the production of goods for commerce."  [Docket No. 1, ¶ 12; Docket No. 13, ¶ 12.]

6. Schnepf's primary job duties included answering the telephone, looking up used auto parts for customers, ordering used auto parts for customers, and quoting prices to customers. Additionally, Schnepf sometimes performed work on Brothers' computers.  [Tr. at 17:4–8.]

7. Schnepf never left the premises of Brothers in order to make a sale.  [Tr. at 17:17–19; Tr. at 48:9–49:4.]

8. Although Schnepf had some latitude when it came to negotiating prices, Brothers provided guidelines that the inside salespeople were required to follow, and Schnepf sought permission from management in the event he wished to depart from the guidelines, i.e. retail prices, established by Brothers.  [Tr. at 41:9–43:8; Tr. at 55:3–56:3; Tr. at 61:5–17.]

9. Schnepf was paid a salary throughout the course of his employment with Brothers. [Tr. at 18:12–14; Tr. at 95:8–23.]

10. Schnepf's starting salary was $450 per week.  [Tr. at 17:20–24.]

11. After one week of employment, Schnepf received a raise of $100 per week.  [Tr. at 105:1–21.]

12. Schnepf received another $100 per week raise in February 2008.  [*Id.*]

13. Schnepf received another $100 per week raise in May 2009.  [*Id.*]

14. Brothers hired and scheduled Schnepf to work a fixed number of hours per week: Monday through Friday from 8 a.m. to 5 p.m. and every other Saturday from 9 a.m. to 1 p.m. [Tr. at 18:15–22; Tr. at 45:22–46:3.]

15. Approximately half way through his employment, Schnepf's work schedule changed from being scheduled to work every other Saturday to being scheduled to work every third Saturday.  Schnepf's Monday through Friday schedule did not change.  [Tr. at 18:23–19:8.]

16. Other than on two or three occasions when he received an uninterrupted thirty to sixty minute lunch break, Schnepf did not receive uninterrupted lunch breaks while working for Brothers.  [Tr. at 19:10–20:15; Tr. at 33:2–14; Tr. at 46:7–19.]

17. Schnepf generally began his workday between 7:45 a.m. and 8 a.m.  [Tr. at 21:13-19; Tr. at 66:9–12; Tr. at 72:24–73:2.]

18. Schnepf worked between fifteen and thirty minutes per day following his regularly scheduled shift.  [Tr. at 20:16–21:6; Tr. at 33:20–21; Tr. 63:17–64:11.]

19. Schnepf worked an additional three hours per month after his regularly scheduled shift installing updates and doing repairs on Brothers' computers.  [Tr. at 21:5–12; Tr. at 33:15–18.]

20. Schnepf was never paid any compensation by Brothers for the overtime hours he worked.  [Tr. at 21:23–24; Trial Ex. 1.]

21. William Barnard, Brothers' controller, received training with respect to the Fair Labor Standards Act during his employment with Brothers.  [Tr. at 115:16–18.]

22. Barnard is unaware of any efforts undertaken by Brothers to determine if its

employees were being properly compensated and is unaware of any reviews being conducted of the duties of an inside salesperson to determine whether employees were being properly compensated.  [Tr. at 115:3–15; Tr. at 116:7–11.]

23. According to Barnard, Brothers' position is that inside salespersons is an exempt position pursuant to the administrative exemption because inside salespersons had the ability to negotiate prices with suppliers and customers.  [Tr. at 116:15–117:3.]

24. Whenever Schnepf was working, an owner, manager, and/or keyholder was present at the facility or aware of Schnepf's presence at the facility.  [Tr. at 22:14–24:10; Tr. at 32:9–18.]

25. At all times relevant to this action, Schnepf was an "employee" within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(6).  [Docket No. 1, ¶ 6; Docket No. 13, ¶ 6.]

26. Brothers is an "employer" within the meaning of 29 U.S.C. § 1002(5).  [Docket No. 1, ¶ 7; Docket No. 13, ¶ 7.]

27. At all times relevant to this action, Brothers was a "fiduciary" as that term is defined by 29 U.S.C. §1002(21).  [Docket No. 1, ¶ 9; Docket No. 13, ¶ 9.]

28. At the time of his hiring, Schnepf was informed he would be eligible to obtain health insurance through Brothers after ninety days of employment.  [Tr. at 24:11–25:2; Tr. at 58:9–16.]

29. While Schnepf discussed the possibility of obtaining health insurance and participating in Brothers' 401(k) program with Brothers' vice president, Jeremiah Johnson, and Barnard after the 90-day grace period [Tr. at 25–28], Schnepf ultimately did not elect to participate in Brothers' health insurance or 401(k) programs.  [*See* Tr. at 26; Tr. at 28:17–19;

Tr. at 36, 121; Tr. at 94, 99–104.]

     30. Instead, Schnepf obtained health insurance through his wife's employer in 2009. [Tr. at 36:1–8, 121:5–6.]

     31. The health insurance offered by Brothers would have cost Schnepf $12,000 a year to insure his family.  [Tr. at 99–104.]

     32. During Schnepf's employment at Brothers, Taylor Chambers, Schnepf's wife's daughter from a former relationship, was admitted to a hospital for medical treatment.  [Tr. at 28, 34.]  Chambers incurred $40,417.90 in medical bills during the time Schnepf was employed with Brothers.  [Tr. at 28:20–25; Tr. 30:2–14; Trial. Ex. 2.]

     33. Chambers is neither Schnepf's biological nor adopted child, and Schnepf has no legal obligation to provide health insurance to Chambers or otherwise pay her medical expenses. [Tr. at 34–35.]

     34. All medical bills associated with Chambers' hospitalization were directed solely to Christina Schnepf.  [*Id.*]

     35. Chambers' biological father is legally obligated to pay child support and provide health insurance to Chambers, although the biological father did not provide health insurance at the time of Chambers' hospitalization.  [Tr. at 36:12-17; Tr. at 121:2–25; Tr. at 129:3–7.]

     36. Some of Chambers' hospital bills have been paid by the state of Indiana through Hoosier Healthwise.  [Tr. at 38:13–17, 39:12–17.]

## CONCLUSIONS OF LAW

A.      *The Fair Labor Standards Act*

1. FLSA applies to Schnepf's claim against Brothers.  [Docket No. 1, ¶¶ 10–12; Docket No. 13, ¶¶ 10–12.]

2. The FLSA requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week.  29 U.S.C. § 207(a)(1); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660 (7th Cir. 2011).

3. The FLSA exempts employers from this requirement with respect to individuals "employed in a bona fide executive, administrative, professional capacity."  29 U.S.C. § 213(a)(1).

4. Coverage under the FLSA is to be liberally construed in favor of the employee and its exemptions narrowly applied against the employer.  *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660 (7th Cir. 2011).  Thus, the employer bears the burden of establishing a particular exemption by "preponderance of the evidence."  *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007).

5. An employee is considered a bona fide administrative employee if he is compensated at a rate not less than $455 per week, his primary work duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and his primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.

6. Brothers presented no evidence that Schnepf performed any administrative-type

job duties, as opposed to making specific sales to individual customers.  The phrase "directly related to the management or general business operations" means that the type of work performed by the employee is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  In *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991), *cert. denied*, 503 U.S. 936 (1992), the Third Circuit examined the status of inside salespersons who sold electrical products.  The court found that these inside salespersons were "production" workers who did not qualify for the administrative exemption because the company's primary business purpose was to sell electrical products.  *Id.* at 904.  The court held that the salespersons did not "service" the business merely because they engaged in negotiations and represented the company in their sales efforts.  *Id.* Instead, the court found that negotiations over the price and other terms of the sale "are 'part and parcel' of the activity of 'producing sales.'"  *Id.*  Therefore, any tasks or duties performed "in the course of ordinary selling do not constitute administrative-type 'servicing' of Cooper's wholesale business . . . . These are only routine aspects of sales production."  *Id.* at 905; *see also Reiseck v. Universal Commc'ns. of Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010) ("[A]n employee making specific sales to individual customers is a salesperson for the purposes of the FLSA, while an employee encouraging an increase in sales generally among all customers is an administrative employee for the purposes of the FLSA.").

     7. In this case, Schnepf's primary job duty was to sell automotive parts to individual customers, which is nonexempt work.  Brothers has not satisfied its burden of showing that Schnepf's primary job duty consisted of the performance of office or nonmanual work directly

related to management policies or general business operations of his employer.

8. The third and final element of the administrative exemption focuses on whether an employee in performing his or her primary duty, exercises "discretion and independent judgment" regarding matters of significance. 29 C.F.R. § 541.200(a)(3). Brothers has not satisfied its burden. In determining whether an employee exercises discretion and independent judgment, it is necessary to consider "all facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b). The regulations lay out multiple factors that are relevant to the inquiry, including:

> Whether the employee has the authority to formulate, affect, interpret or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree . . . whether the employee has the authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* Schnepf had little latitude when negotiating prices; Brothers provided guidelines that the inside salespeople were required to follow and Schnepf sought permission from management in the event that he wished to depart from the guidelines, i.e. retail prices, established by Brothers. Under these circumstances, to the extent Schnepf exercised some discretion and independent judgment, it was in making routine sales, as opposed to "matters of significance."

9. Salespersons are exempted from the FLSA in two instances: (1) as "outside salespersons" pursuant to 29 C.F.R. § 541.500; and (2) as "commissioned salespersons" pursuant to 29 U.S.C. § 207(I). Schnepf does not qualify for either exemption. Pursuant to the

regulations, an "outside salesperson" must be "customarily and regularly engaged away from the employer's place or places of business . . . ." 29 C.F.R. § 541.500(a)(2). Schnepf never left the premises of Brothers in order to make a sale. A "commissioned salesperson" requires that more than half of the employee's compensation during a representative period of more than one month be paid in the form of commission. 29 U.S.C. § 207(I). Schnepf was paid a salary throughout the course of his employment with Brothers and did not receive a commission.

10. For these reasons, Brothers did not satisfy its burden of proof with respect to any FLSA exemption. Thus, the Court finds that Schnepf is entitled to overtime compensation.

11. The FLSA provides for a two-year statute of limitations. 29 U.S.C. § 255(a). This period may be extended to three years for "a cause of action arising out of a willful violation." *Id.* "An employer acts willfully, for purposes of establishing the proper statute of limitations, where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA." *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995); *see also Felker v. Sw. Emergency Med. Sev., Inc.*, 581 F. Supp. 2d 1006, 1012 (S.D. Ind. 2008). The regulations define "reckless disregard" as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104. Accordingly, the "three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather it may apply when it simply disregarded the possibility that it might be violating the FLSA." *Allen v. Bd. of Pub. Ed.*, 495 F.3d 1306, 1324 (11th Cir. 2007).

12. The three-year statute of limitations applies because Brothers failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. Although Barnard testified he received training with respect to the FLSA during his employment with Brothers, he

conceded Brothers made no effort to determine if its employees were being properly compensated and is unaware of any reviews being conducted of the duties of an inside salesperson to determine whether employees were being properly compensated.

13. "An employee bears the burden of proving that she performed work for which she was not properly compensated." *Brown v. Family Dollar Stores of Ind.*, *LP*, 534 F.3d 593, 594 (7th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). In *Anderson*, the Supreme Court held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687–88. The burden then would shift to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* If the employer fails to meet that burden, a court may award damages even though they are approximations. *Id.* at 688. Moreover, "where an employer fails to keep the proper and accurate records required by the FLSA, the employer, rather than the employee should bear the consequences of that failure." *Brown*, 534 F.3d at 595.

14. Schnepf established that he worked the following number of overtime hours:

(A) 5 overtime hours per week pursuant to his scheduled 45 hour workweek;
(B) 2.5 overtime hours per week performing pre- and post-shift duties (5 days per week x 7.5 minutes per day pre-shift based on the midpoint of 7:45 a.m. and 8 a.m. + 22.5 minutes per day post-shift based on the midpoint of 15 minutes and 30 minutes);
(C) .69 overtime hours per week performing computer work (3 overtime hours per month x 12 months ÷ 52 weeks) performing computer work; and
(D) 4 overtime hours every other Saturday during the first half (60 weeks) of his employment and 4 overtime hours every 3rd Saturday during the second half (60 weeks) of his employment.

10

15. Schnepf is entitled to "not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of forty hours in a given week. 29 U.S.C. § 207(a).  Under the regulations, "if the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113. Schnepf's salary was intended to compensate Monday through Friday from 8 a.m. to 5 p.m. and every other Saturday from 9 a.m. to 1 p.m.  Approximately half way through his employment, Schnepf's work schedule changed from being scheduled to work every other Saturday to being scheduled to work every third Saturday but his Monday through Friday schedule did not change. Accordingly, Schnepf's salary was intended to compensate him for the number of hours he was scheduled to work in a workweek and, therefore, his regular rate of pay is calculated by dividing his weekly salary by the number of hours he was scheduled to work.  *See Urnikis-Negro v. Am. Family Property Servs.*, 616 F.3d 665 (7th Cir. 2010).

16. Brothers failed to meet its burden to produce evidence of the precise amount of work Schnepf performed or to negate the reasonableness of the inference to be drawn from Schnepf's evidence.  Accordingly, the Court awards damages based upon Schnepf's approximations of the hours he worked, which the Court finds reasonable in light of the evidence.

17. Schnepf is entitled to unpaid overtime calculated as follows:

**Time Period October 15, 2007 – October 22, 2007 (1 week)**

- Weekly Salary: $450
- Overtime Hours: 8.19 (5 scheduled hours + 2.5 hours pre- and post-schedule + .69 computer hours) for week Schnepf was not scheduled to work on Saturday
- Regular Rate: $450 ÷ 45 hours = $10 per hour
- Overtime Rate: $10 x 1.5 = $15 per hour
- Weekly Overtime: $15 x 8.19 hours = $122.85 per week
- **Total Unpaid Overtime: $122.85**

**Time Period October 22, 2007 – February 18, 2008 (17 weeks)**

- Weekly Salary: $550
- Overtime Hours: 12.19 (5 scheduled hours + 4 Saturday hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 9 weeks Schnepf was scheduled to work on Saturday + 8.19 (5 scheduled hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 8 weeks Schnepf was not scheduled to work on Saturday
- Regular Rate: $550 ÷ 49 hours = $11.22 per hour for weeks Schnepf was scheduled to work Saturday and $550 ÷ 45 hours = $12.22 per hour for weeks Schnepf was not scheduled to work Saturday
- Overtime Rates: $11.22 x 1.5 = $16.83 per hour and $12.22 x 1.5 = $18.33 per hour
- Weekly Overtime: $16.83 x 12.19 hours = $205.16 per week and $18.33 x 8.19 hours = $150.12 per week
- **Total Unpaid Overtime: $1,846.44 (9 weeks x $205.16) + $1,200.96 (8 weeks x $150.12) = $3,047.40**

**Time Period February 18, 2008 – December 6, 2008 (42 weeks)**

- Weekly Salary: $650
- Overtime Hours: 12.19 (5 scheduled hours + 4 Saturday hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 21 weeks Schnepf was scheduled to work on Saturday + 8.19 (5 scheduled hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 21 weeks Schnepf was not scheduled to work on Saturday
- Regular Rates: $650 ÷ 49 hours = $13.26 per hour for weeks Schnepf was scheduled to work on Saturday and $650 ÷ 45 hours = $14.44 per hour for weeks Schnepf was not scheduled to work on Saturday
- Overtime Rates: $13.26 x 1.5 = $19.89 per hour and $14.44 x 1.5 = $21.66 per hour
- Weekly Overtime: $19.89 x 12.19 hours = $242.46 per week and $21.66 x 8.19 hours = $177.40 per week
- **Total Unpaid Overtime: $5,091.66 (21 weeks x $242.46) + $3,725.40 (21 weeks x $177.40) = $8,817.06**

**Time Period December 6, 2008 – May 15, 2009 (23 weeks)**

- Weekly Salary: $650
- Overtime Hours: 12.19 (5 scheduled hours + 4 Saturday hours + 2.5 hours pre and post-schedule + .69 computer hours) for 21 weeks Schnepf was scheduled to work on Saturday + 8.19 (5 scheduled hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 21 weeks Schnepf was not scheduled to work on Saturday.
- Regular Rates: $650 ÷ 49 hours = $13.26 per hour for weeks Schnepf was scheduled to work on Saturday and $650 ÷ 45 hours = $14.44 per hour for weeks Schnepf was not scheduled to work on Saturday.
- Overtime Rates: $13.26 x 1.5 = $19.89 per hour or $14.44 x 1.5 = $21.66 per hour
- Weekly Overtime: $19.89 x 12.19 hours = $242.46 per week and $21.66 x 8.19 hours = $177.40 per week
- **Total Unpaid Overtime: $1,697.22 (7 weeks x $242.46) + $2,838.40 (16 weeks x $177.40) = $4,535.62**

**Time Period May 15, 2009 – February 3, 2010 (37 weeks)**

- Weekly Salary: $750
- Overtime Hours: 12.19 (5 scheduled hours + 4 Saturday hours + 2.5 hours preand post-schedule + .69 computer hours) for 21 weeks Schnepf was scheduled to work on Saturday + 8.19 (5 scheduled hours + 2.5 hours pre- and post-schedule + .69 computer hours) for 21 weeks Schnepf was not scheduled to work on Saturday
- Regular Rates: $750 ÷ 49 hours = $15.31 per hour for weeks Schnepf was scheduled to work on Saturday and $750 ÷ 45 hours = $16.67 per hour for weeks Schnepf was not scheduled to work on Saturday
- Overtime Rates: $15.31 x 1.5 = $22.96 per hour and $16.67 x 1.5 = $25 per hour
- Weekly Overtime: $22.96 x 12.19 hours = $279.88 per week and $25.00 x 8.19 hours = $204.75 per week
- **Total Unpaid Overtime: $3,638.44 (13 weeks x $279.88) + $4,914.00 (24 weeks x $204.75) = $8,552.44**

**Total Overtime Owed from October 15, 2007 – February 3, 2010**

- $122.85 + $3,047.40 + $8,817.06 + $4,535.62 + $8,552.44 = $25,075.37

18. Schnepf is entitled to an award of $25,075.37 in unpaid overtime.

19. Under the FLSA, liquidated damages are "the norm and single damages the exception." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986); *see also Avita v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1223 (7th Cir. 1995); *Rasic v. City of Northlake*,

13

No. 08-C-104, 2010 WL 3365918, at *14 (N.D. Ill. Aug. 24, 2010).  Courts have the discretion

to deny liquidated damages only where "the employer shows that it acted in good faith with

reasonable grounds to believe that its actions did not violate FLSA." *Bankston v. State of Ill.*, 60

F3d 1249, 1254 (7th Cir. 1995).  The burden of demonstrating good faith and reasonable belief

rests with the employer.  *Id.*; *see also Shea v. Galaxie Lumber & Const. Co., Ltd.*, 152 F.3d 729,

733 (7th Cir. 1998).

     20. Brothers did not meet its burden of demonstrating good faith and reasonable belief.

Barnard testified he is unaware of any efforts undertaken by Brothers to determine if its

employees are being properly compensated and is unaware of any reviews being conducted of

the duties of an inside salesperson to determine whether said employees were being properly

compensated.  Brothers provided no additional evidence that would support a finding of good

faith.  Under these circumstances, Schnepf is entitled to liquidated damages in an amount equal

to his unpaid overtime.  29 U.S.C. § 216(b).

     21. Brothers is not permitted to "deduct" the cost of any meals provided for Schnepf

during the course of his employment with Brothers.  Brothers misunderstands the applicable

FLSA provision that permits employers to consider the cost of benefits provided to employees as

part of the employee's wages under the FLSA.  29 U.S.C. § 203.  This provision of the FLSA

permits employers, under certain circumstances, to include the "reasonable costs" of furnishing

meals to employees as part of the employee's wages.  *Morgan v. SpeakEasy, LLC*, 625 F. Supp.

2d 632, 655 (N.D. Ill. 2007).  However, employers typically raise this provision in lawsuits

alleging the failure to pay minimum wages, because if applicable, the "reasonable costs" of

providing the meals will increase the amount of wages paid to the employee.  *Archie v. Grand*

*Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 268 n.4 (S.D.N.Y. 2000).  Here, there is no legal basis for Brothers to claim an offset of the cost of meals against the award of liquidated damages because the damages are based on unpaid overtime.

22. Moreover, the employer bears the burden of demonstrating that any deduction from wages represents the reasonable costs of the meals and where an employer fails to comply with the record-keeping provisions of the FLSA, the employer does not satisfy its burden of proving reasonable costs.  *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 655–56 (N.D. Ill. 2007). The evidence offered by Brothers [Tr. at 104:8–25] regarding the amount spent on meals is insufficient for Brothers to satisfy its burden because it does not comply with the record keeping provision and Brothers' generalized estimate of aggregate costs is insufficient to support a deduction from Schnepf's wages.  *Cf. Morgan*, 655 F. Supp. 2d at 655 (citing *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 914 (6th Cir. 1999) ("employer complied with recordkeeping requirements of FLSA meal-credit provisions by 'show[ing] the meal-credit deduction on the weekly paycheck of each of its employees,' and 'maintain[ing] records of the cost of all of the food it purchased, whether such food was for consumption by employees or by customers . . . .'")); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912 (6th Cir. 1999).

23. For these reasons, Schnepf is entitled to an additional award of $25,075.37 in liquidated damages.

B.    *Employee Retirement Income Security Act*

24. ERISA makes it unlawful to "discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act

[29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."  29 U.S.C. § 1140.

25. "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."
29 U.S.C. § 1002(1).

26. The health insurance plan offered by Brothers to its employees falls within the purview of ERISA since it is "(1) a plan, fund, or program; (2) established or maintained; (3) by an employee organization; (4) for the purpose of providing medical, surgical, or hospital care or benefits in the event of sickness, accident, disability; (5) to participants or their beneficiaries."
*Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 730 (7th Cir. 2005).

27. Brothers did not discriminate against Schnepf or interfere with his rights to participate in its health insurance program.

28. While Schnepf discussed the possibility of obtaining health insurance and participating in Brothers' 401(k) program with Johnson and Barnard after the 90-day grace

16

period [Tr. at 25–88], Schnepf ultimately did not elect to participate in Brothers' health insurance or 401(k) programs.  [*See* Tr. at 26; Tr. at 28:17–19; Tr. at 36, 121; Tr. at 94, 99–104.]

29. Instead, Schnepf ultimately obtained health insurance through his wife's employer in 2009.  [Tr. at 36, 121.]

30. The health insurance offered by Brothers would have cost Schnepf $12,000 a year to insure his family.  [Tr. at 94, 99–104.]  The high cost of this insurance, plus the availability of insurance through his wife's employer, undermines Schnepf's claim that he sought health insurance through Brothers.

31. Schnepf's ERISA claim therefore fails as a matter of law because he was not a participant under ERISA.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989); *Hutcherson v. Krispy Kreme Doughnut Corp.*, No. 1:09-cv-757-RLY-TAB, 2011 WL 1103344, at *3 (S.D. Ind. Mar. 22, 2011).

32. Even if Schnepf had elected to participate in Brothers' health insurance program, Schnepf failed to satisfy his burden of proof at trial and prove that Taylor Chambers is a beneficiary under Brothers' health insurance plan.  *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) ("For claims seeking benefits under an ERISA plan, we have held that 'at trial the plaintiffs would bear the burden of proving [the ERISA beneficiary's] entitlement to the benefits of the insurance coverage . . . ."); *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 (7th Cir. 1994) ("The parties have argued the question of who bears the burden of proving Fuja's entitlement to the insurance coverage. The trial court determined that because the "medically necessary" provision of the insurance contract is set forth in the contract benefits section, as opposed to the "exclusions" section, that Fuja bore the burden of establishing her

17

entitlement to the insurance benefits. We agree with the trial court's determination on this issue);

*Steckel v. Cen. Reserve Life Ins. Co.*, No. 4:09-CV-63-TS, 2011 WL 53095, at *3 (N.D. Ind. Jan.

7, 2011) (same); *Hintz Prudential Ins. Co. of Am.*, 687 F. Supp. 2d 772, 794 (N.D. Ill. 2009)

(same).

33. Claims for benefits under Brothers' health insurance plan are limited to participants

and beneficiaries.  29 C.F.R. § 2560.503–1(a); *see also* 29 U.S.C. § 1132(a)(1).  Schnepf's

ERISA claim fails as a matter of law because Chambers was not a beneficiary under ERISA.  *See*

*Hutcherson v. Krispy Kreme Doughnut Corp.*, No. 1:09-cv-757-RLY-TAB, 2011 WL 1103344,

at *3 (S.D. Ind. Mar. 22, 2011).

34. Under ERISA, a "beneficiary" is "a person designated by a participant, or by the

terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

29 U.S.C. § 1002(8); *see also Reliance Standard Life Ins. Co. v. Lyons*, 756 F. Supp. 2d 1013,

1026 (N.D. Ind. 2010).

35. Beneficiaries under Brothers' health insurance plan include spouses and children.

[Trial Ex. 12.]

36. Schnepf seeks reimbursement of medical expenses that his wife's daughter, Taylor

Chambers, incurred after being admitted to a hospital.

37. Chambers is neither Schnepf's biological nor adopted child.  Schnepf has no legal

obligation to provide health insurance or any other support to Chambers.  [*Id.* at 34–35.]

Instead, Chambers' biological father is legally obligated to pay child support and provide health

insurance to Chambers, although the biological father did not provide health insurance at the

time of Chambers' hospitalization.  [Tr. at 36; Tr. at 120:13–21; Tr. at 129:3–7.]

18

38. Moreover, no evidence has been presented that Chambers falls within the meaning of "children" for the purposes of Brothers' health insurance plan. *See generally Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872–73 (7th Cir. 2001) ("ERISA plans are governed by written documents that define their scope . . . .").

39. Schnepf therefore has failed to meet his burden of proof that Chambers qualifies as a beneficiary.

40. For these reasons, Schnepf is not entitled to recover medical expenses incurred by Chambers.

C.      *Attorney's fees and expenses*

41. Schnepf requests reasonable attorney's fees and costs incurred in the prosecution of this matter pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 1132(g).

42. "The FLSA awards reasonable attorney's fees and costs to prevailing plaintiffs." *Johnson v. G.D.F.*, No. 07-C-3996, 2011 WL 1103797, at *2 (N.D. Ill. Mar. 25, 2011) (citing 29 U.S.C. § 216(b)).

43. Schnepf prevailed in this FLSA action, and is therefore entitled to fees and costs. *Id.*

44.  29 U.S.C. § 1132(g)(1) provides that in any ERISA action "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Lincoln Nat'l Life Ins. Co. v. Joann Gant*, No. , 2009 WL 1708809, at *1 (S.D. Ill. June 17, 2009) (quoting 29 U.S.C. § 1132(g)(1)).  "The Seventh Circuit has read into this statute a requirement that the party be a 'prevailing' party in order to receive a fee award."  *Id.* (citing *Bender v. Freed*, 436 F.3d 747, 749 (7th Cir. 2006) (stating that § 1132(g)(1) "authorizes the court to award fees, in its discretion, to the prevailing party in an

19

ERISA action"); *Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004) ("ERISA authorizes . . . the award of reasonable attorney's fees to a prevailing plaintiff in a suit for benefits.")).  "While the Seventh Circuit has articulated two other tests to determine whether attorney's fees should be granted, both of these tests presume that a party was a 'prevailing' party." *Lincoln*, 2009 WL 1708809, at *1 (citing *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005)).

45. Schnepf is not a prevailing party with respect to his ERISA claim, and therefore may not recover attorney's fees or expenses pursuant to 29 U.S.C. § 1132(g).[1]

46. To the extent that attorney's fees for both claims overlap, Plaintiff may recover for fees expended if related to both claims.  *Fidelity & Deposit Co. of Md. v. Krebs Engineers*, 859 F.2d 501, 509 (7th Cir. 1988); *Apostolic Pentecostal Church of Morgan Park v. Colbert*, No. 89-C-3688, 1994 WL 583348, at *2 (N.D. Ill. Oct. 21, 1994).

---

[1]Although Schnepf did not succeed on his ERISA claim, for purposes of ERISA's fee-shifting provisions, the Court concludes that Schnepf's position was substantially justified. *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 128 (7th Cir. 1991).  Therefore, Brothers is not entitled to any attorney's fees under ERISA.

## CONCLUSION

Schnepf is entitled to an award of $25,075.37 in unpaid overtime, plus an additional $25,075.37 in liquidated damages, for a total award under the FLSA of $50,150.74.  Schnepf is not entitled to any recovery on his ERISA claim.  Pursuant to 29 U.S.C. § 216(b) of the FLSA, Schnepf may submit a petition for reasonable attorney's fees and expenses within fourteen days of this order.  Judgment shall await any attorney's fee award.

Dated:   02/10/2012

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

James Richard Recker
ATTORNEY AT LAW
jamesrecker@justice.com